Hand-Delivered

FILED
CHARLOTTE, NC

SEP 01 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**{CHARLOTTE DIVISION}**

| | |
|---|---|
| **NA'EEM OMAR BETZ,**<br><br>Plaintiff,<br>v.<br><br>**MIDLAND CREDIT MANAGEMENT, INC.,**<br><br>Defendant. | **Civil Action No.** 3:26-cv-708-SCR<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Na'eem Omar Betz ("Plaintiff"), proceeding pro se unless and until counsel appears, brings this civil action against Midland Credit Management, Inc. ("MCM" or "Defendant"), and alleges as follows. Allegations concerning Plaintiff's own acts and experiences are based on personal knowledge. Allegations concerning Defendant's systems, records, document possession, and internal receipt or routing are made on information and belief because the relevant evidence is principally within Defendant's possession, custody, or control.

## I. NATURE OF THE ACTION

**1.** This is an individual consumer-protection action arising from Defendant's collection and attempted collection of an alleged charged-off Capital One, N.A. SavorOne credit-card account ending in 5222, for which Defendant demanded $3,310.32.

**2.** Defendant sent Plaintiff an April 22, 2026 mailed collection and validation notice, a June 6, 2026 payment-options email, and a June 12, 2026 account-portal and payment-options email. Each communication concerned the same alleged debt and was directed to Plaintiff in Charlotte, North Carolina. See Compl. Exs. B-D.

**3.** On June 11, 2026, Plaintiff transmitted a written dispute, validation demand, cease-communication notice, communication restriction, and notice of intent to sue by email and certified mail to Defendant's designated consumer-support addresses. See Compl. Exs. G-H.

**4.** On June 12, 2026, Defendant sent another collection email telling Plaintiff to finish logging into Defendant's portal, verify identity using the last four digits of a Social Security number, review alleged verification documents, and select payment options. See Compl. Ex. D.

**5.** Defendant later admitted in written responses to the Consumer Financial Protection Bureau ("CFPB") and the North Carolina Department of Justice ("NCDOJ") that it purchased the account, relied on information supplied by the seller, was not then furnishing the account to consumer reporting agencies, had marked the account "Cease and Desist," and had made a "system error" in displaying an additional digit in the email balance. See Compl. Exs. E-F.

6. Plaintiff does not allege that the FDCPA creates a per se right to receive every confidential term of a portfolio-sale agreement merely because a consumer requests it. See Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). Plaintiff alleges instead that Defendant's repeated failure to identify or produce any operative title instrument or account-level assignment—while continuing to make unqualified claims that it was the sole owner, current creditor, and entity entitled to payment—is probative of whether Defendant verified the creditor's identity and its own authority and renders those representations actionable under 15 U.S.C. §§ 1692e and 1692g when the statutory predicates are satisfied.

7. Plaintiff's North Carolina documentation claim is independently based on N.C. Gen. Stat. § 58-70-115(5), which prohibits a debt buyer or a collection agency acting for a debt buyer from attempting collection without valid documentation that the debt buyer owns the specific account and reasonable verification of the amount. The legal significance of the missing chain documents is further informed by N.C. Gen. Stat. § 58-70-150(2), which requires a debt-buyer plaintiff to attach the assignment or other writing establishing ownership and, if the debt was assigned more than once, each transfer necessary to establish an unbroken chain of ownership.

**8.** Plaintiff does not presently assert a Fair Credit Reporting Act claim because Defendant expressly stated that it was not then furnishing the account to Plaintiff's consumer credit files, and Plaintiff does not allege a contrary current tradeline. Plaintiff preserves claims arising from any later-discovered furnishing, verification, or reporting conduct.

**9.** To the extent Defendant disputes whether it is governed by Chapter 58, Article 70 of the North Carolina General Statutes, Plaintiff pleads the alternative North Carolina Debt Collection Act theory stated in Count III under Federal Rule of Civil Procedure 8(d).

**10.** Plaintiff seeks actual damages, statutory damages, North Carolina civil penalties, treble damages on compensatory loss where authorized, compensatory and punitive damages on the common-law privacy claim where proven, costs, reasonable attorney's fees if counsel appears and the governing statute permits fees, pre- and post-judgment interest, and all other relief authorized by law without duplicative recovery.

**11.** Consistent with Federal Rule of Civil Procedure 5.2, this Complaint identifies the alleged Capital One account only by its last four digits and identifies Defendant's internal

reference only by the last four digits, 3836. Any exhibits filed publicly should be redacted to the same extent before filing.

## II. PARTIES

12. Plaintiff Na'eem Omar Betz is a natural person who resides in Charlotte, Mecklenburg County, North Carolina.

13. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3), a consumer or debtor under N.C. Gen. Stat. §§ 58-70-90 and 75-50, and the individual to whom Defendant directed the challenged communications.

14. The alleged obligation arose, if at all, from a consumer credit-card account used or allegedly used primarily for personal, family, or household purposes. It is therefore a "debt" within the meaning of 15 U.S.C. § 1692a(5) and an alleged consumer debt under North Carolina law.

15. Defendant Midland Credit Management, Inc. is a business entity engaged in purchasing, servicing, collecting, and attempting to collect delinquent and charged-off consumer debts through interstate mail, email, internet portals, telephone systems, and other instrumentalities of interstate commerce.

16. Defendant is a "debt collector" under the principal-purpose definition of 15 U.S.C. § 1692a(6). Defendant also repeatedly identified itself in the challenged communications as a debt collector attempting to collect a debt. See Compl. Exs. B-D.

17. Defendant is a "collection agency" and "debt buyer" under N.C. Gen. Stat. § 58-70-15 because it admits purchasing a charged-off consumer credit account for collection and collecting the account in its own name. See Compl. Ex. E.

18. Defendant represented that it was licensed to collect in North Carolina and listed multiple North Carolina Department of Insurance license or permit numbers in the June 6 and June 12 emails. See Compl. Exs. C-D.

19. Defendant identified offices or correspondence addresses at 350 Camino de la Reina, Suite 100, San Diego, California 92108, and 320 E. Big Beaver Road, Suite 300, Troy, Michigan 48083. See Compl. Exs. B-F.

20. At all relevant times, Defendant acted through its officers, managers, counsel, employees, agents, affiliates, contractors, email vendors, portal vendors, and other persons whose acts were authorized, directed, ratified, or accepted by Defendant within the scope of their authority or agency.

## III. JURISDICTION, PERSONAL JURISDICTION, AND VENUE

21. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Counts I and II arise under the FDCPA, 15 U.S.C. §§ 1692 et seq. The FDCPA separately authorizes suit in an appropriate United States district court without regard to the amount in controversy. 15 U.S.C. § 1692k(d).

22. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Counts III through V because the North Carolina statutory and common-law claims arise from the same alleged debt, communications, documents, systems, and course of collection conduct as the federal claims and form part of the same Article III case or controversy.

23. The Court may exercise personal jurisdiction over Defendant because Defendant purposefully directed collection letters and electronic communications to Plaintiff in North Carolina, maintained North Carolina collection authority, sought payment from a North Carolina resident, and caused the alleged injuries in this State.

24. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, including Plaintiff's receipt, review, and response to the communications and the resulting injuries.

25. Assignment to the Charlotte Division is proper because Plaintiff resides in Mecklenburg County, the challenged communications were directed to and received in Charlotte, and the resulting harm occurred in Charlotte.

26. The federal claims are timely under 15 U.S.C. § 1692k(d) because the challenged communications and acts occurred in June 2026, within one year before commencement of this action. The state claims are also timely under the applicable North Carolina limitations periods.

27. No jurisdictional amount is required for the FDCPA claims, and the Court's supplemental jurisdiction does not depend on diversity of citizenship.

## IV. FACTUAL ALLEGATIONS

### A. Capital One transfer notice and Defendant's April 22, 2026 collection notice

28. On February 26, 2026, Capital One sent Plaintiff a notice stating that Defendant "now owns your account" and that a Savor credit-card account ending in 5222, with a balance of $3,310.32, had been "sold and transferred on or about 01/21/2026." See Compl. Ex. A at 3.

29. The Capital One notice directed Plaintiff not to send future payments to Capital One and identified Defendant as responsible for collecting future payments and answering account questions. See Compl. Ex. A at 3.

30. On April 22, 2026, Defendant mailed Plaintiff a collection and validation notice concerning the same alleged account. Defendant identified itself as a debt collector and stated: "We are trying to collect on your CAPITAL ONE, N.A. debt that you now owe to MCM." See Compl. Ex. B at 3.

31. The April 22 notice stated that the account had been sold to Defendant on January 28, 2026 and that Defendant was the "sole owner" of the debt. See Compl. Ex. B at 3.

32. The April 22 notice identified the alleged account as a Capital One, N.A. SavorOne account ending in 5222, listed the alleged last-payment date as November 29, 2024, the alleged default date as February 10, 2025, and the alleged charge-off date as July 18, 2025. See Compl. Ex. B at 3.

33. The notice listed a charge-off balance and current balance of $3,310.32 and represented that no interest, fees, payments, or credits had been added or applied after July 18, 2025. See Compl. Ex. B at 3.

34. The notice instructed Plaintiff to dispute all or part of the debt or request original-creditor information by June 6, 2026. See Compl. Ex. B at 3.

35. The notice solicited payment to Defendant at its Troy, Michigan address and included a payment coupon and response form. See Compl. Ex. B at 3-4.

36. The privacy notice enclosed with the collection letter identified multiple Midland-related entities, including Midland Credit Management, Inc., Midland Funding LLC, MRC Receivables Corporation, Midland Funding NCC-2 Corporation, Atlantic Credit & Finance, Inc., and Asset Acceptance LLC. See Compl. Ex. B at 5.

37. The same privacy notice stated that these entities collect names, addresses, Social Security numbers, telephone numbers, account balances, payment histories, account

activity, credit scores, and credit-history information, and may share customer information with affiliates and service providers to service or manage accounts. See Compl. Ex. B at 5-6.

38. Neither the April 22 notice nor its enclosures attached an account-level bill of sale, account-level sale schedule, chain-of-title document, cardholder agreement, document evidencing Plaintiff's alleged use or liability, the twelve most recent account statements before charge-off, or a complete transaction ledger. See Compl. Ex. B.

**B. Defendant's June 6, 2026 payment-options email**

39. On June 6, 2026 at approximately 4:01 p.m., the validation-deadline date printed in the April 22 notice, Defendant sent Plaintiff an email titled "NAEEM, View Your New Payment Options." See Compl. Ex. C at 2.

40. The June 6 email stated: "Your balance is now due," identified a balance of $3,310.32, and invited Plaintiff to "View your options" and resolve the account through Defendant's payment solutions. See Compl. Ex. C at 2.

41. The email stated that Defendant offered "flexible payment options" and warned: "We are not obligated to renew any offers provided." See Compl. Ex. C at 2.

42. The email expressly disclosed that it was a communication from a debt collector and an attempt to collect a debt. See Compl. Ex. C at 2.

43. The email identified Defendant as the "Current Creditor (the sole owner of this debt)" and the "Current Servicer," identified Defendant's internal reference ending in 3836, and displayed the balance in a three-decimal format as "3310.320." See Compl. Ex. C at 3.

44. The June 6 email did not state that Plaintiff's dispute and original-creditor request rights remained available through that date, did not explain that immediate payment was not

required to preserve those rights, and did not reproduce the validation notice. See Compl. Ex. C.

**45.** Because the email stated that the balance was "now due," presented payment options, and warned that offers might not be renewed on the very date Defendant had stated was the deadline to exercise validation rights, the communication was capable of creating uncertainty about whether Plaintiff had to pay immediately rather than exercise those rights.

**46.** The June 6 email did not attach account-level ownership records, a contract or other document evidencing the debt, or the state-law itemized accounting described in N.C. Gen. Stat. § 58-70-90(4).

**C. Plaintiff's June 11, 2026 dispute, validation demand, cease notice, and litigation notice**

**47.** After reviewing Defendant's collection materials, Plaintiff prepared and transmitted a formal written debt-validation and verification demand dated June 11, 2026. See Compl. Ex. G.

**48.** The June 11 demand disputed the alleged debt in its entirety, including the amount, account history, last-payment date, default date, charge-off date, Defendant's ownership, chain of title, authority to collect, and any credit reporting. See Compl. Ex. G.

49. The demand requested, among other things, the complete Bill of Sale, the complete Master Bill of Sale, the operative Purchase and Sale Agreement, the Forward Flow Agreement or equivalent receivables-purchase contract, the account-level sale schedule or data file, every assignment and transfer document establishing an unbroken chain of title from Capital One to the current claimed owner, and documents proving Defendant's authority to collect and enforce the specific account. It also requested the original

cardholder agreement or other document evidencing the debt, account statements and transaction history, proof of the stated dates, an itemized accounting, North Carolina licensing records, communication logs, and electronic-communication consent records. See Compl. Ex. G.

**50.** Plaintiff expressly stated that a balance summary, payment coupon, generic computer screen printout, unsupported affidavit, or unsupported ownership assertion would not establish account-level ownership, amount, and authority under the legal theories Plaintiff identified. See Compl. Ex. G.

**51.** The demand directed Defendant to cease collection, close or suspend the account if it could not provide adequate verification, preserve relevant records, and communicate only through the limited methods and purposes stated in the letter. See Compl. Ex. G.

**52.** On the same date, Plaintiff transmitted a separate Notice of Intent to Sue, Demand for Immediate Cessation of Collection Activity, Litigation Hold, and Final Opportunity to Cure. See Compl. Ex. H.

**53.** The Notice expressly directed Defendant to "immediately cease all collection activity" except permitted formal resolution communications and identified payment demands, payment-option emails, account-portal solicitations, calls, texts, chats, furnishing, transfers, and similar collection acts as prohibited collection activity. See Compl. Ex. H.

**54.** The Notice authorized email only for formal validation documents, dispute-investigation results, litigation-avoidance communications, and written settlement or resolution proposals, and expressly withheld consent for marketing emails, automated payment solicitations, account-portal links, recurring payment invitations, and electronic payment demands. See Compl. Ex. H.

55. The June 11 writings were not an admission that Plaintiff owed the alleged debt, not a promise to pay, and not a waiver of any claim or defense. See Compl. Exs. G-H.

56. Plaintiff transmitted the June 11 writings by email and certified mail to Defendant's designated consumer-support or dispute channels and the addresses Defendant itself had provided for disputes and correspondence. See Compl. Exs. B, G-H.

57. On information and belief, Defendant's email systems received the June 11 writings before Defendant sent the June 12 collection email at approximately 4:00 p.m. The delivery, server, routing, suppression, account-note, and campaign logs that will confirm the time and manner of receipt are within Defendant's possession and control.

58. Plaintiff's June 11 writings independently and unequivocally invoked the cease-communication right under 15 U.S.C. § 1692c(c), regardless of any dispute over whether the separate thirty-day validation period had expired.

**D. Defendant's June 12, 2026 account-portal and payment-options email**

59. On June 12, 2026 at approximately 4:00 p.m., Defendant sent Plaintiff an email titled "NAEEM, Finish Reviewing Your MCM Account!" See Compl. Ex. D at 2.

60. The June 12 email instructed Plaintiff to complete login to Defendant's portal by visiting MidlandCredit.com, entering Defendant's internal reference ending in 3836, and verifying identity using the last four digits of a Social Security number. See Compl. Ex. D at 2.

61. The email represented that, once logged in, Plaintiff could "review documents verifying the accuracy of your debt" and review options to resolve the account. See Compl. Ex. D at 2.

**62.** The email promoted a single-payment resolution, long-term payment plans, and payment by debit card, credit card, or checking account, and invited Plaintiff to call or chat with a live agent. See Compl. Ex. D at 2.

**63.** The June 12 email expressly disclosed that it was a communication from a debt collector and an attempt to collect a debt. See Compl. Ex. D at 2.

**64.** The email again identified Defendant as the current creditor, sole owner, and current servicer, and again displayed the balance as "3310.320." See Compl. Ex. D at 3.

**65.** The June 12 email was a collection communication because it demanded account access, promoted multiple payment methods, offered resolution plans, and identified itself as an attempt to collect a debt.

**66.** The June 12 email did not advise that Defendant was terminating further efforts, did not merely identify a specified remedy Defendant might ordinarily invoke, and did not notify Plaintiff that Defendant intended to invoke a specified remedy. It therefore did not fall within any exception stated in 15 U.S.C. § 1692c(c)(1)-(3).

**67.** The June 12 email was inconsistent with Plaintiff's express prohibition on automated payment solicitations and account-portal links and required use of sensitive identifying information to proceed.

**68.** If Defendant contends that the June 12 email campaign was generated or queued before its receipt of the cease notice, the relevant scheduling, suppression, receipt, and send logs are uniquely within Defendant's control and are discoverable.

**E. Defendant's regulatory responses, admissions, correction, and acknowledged error**

**69.** Plaintiff submitted complaints concerning Defendant's conduct to the CFPB and NCDOJ. Defendant provided written responses dated June 25 and June 29, 2026. See Compl. Exs. E-F.

**70.** In the June 25 CFPB response, Defendant admitted that it purchased the account on January 28, 2026. See Compl. Ex. E at 2.

**71.** Defendant stated that information supplied by Capital One indicated that the account originated on January 6, 2024, was charged off on July 18, 2025, and had a balance of $3,310.32 at purchase. See Compl. Ex. E at 2.

**72.** Defendant described the verification information as information "provided by the seller" and asserted that the seller-provided information satisfied the FDCPA. See Compl. Ex. E at 2.

**73.** Defendant further stated that the original contract, complete payment history, and a full set of billing statements were not required under the FDCPA and directed Plaintiff to Defendant's website to review any additional account documentation. See Compl. Ex. E at 2.

74. Although Plaintiff specifically challenged Defendant's ownership and authority, the June 25 response did not attach or identify by date and parties any Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, or assignment linking the account ending in 5222 to Defendant. Defendant nevertheless maintained that the alleged obligation remained valid, due, and owing and that it possessed the right to repayment. See Compl. Ex. E at 2.

**75.** Defendant stated that the June 6 email was sent within what Defendant considered appropriate guidelines and that Defendant believed prior consent was not required. See Compl. Ex. E at 3.

**76.** Defendant represented that it was licensed in each State requiring collection-company licensing. See Compl. Ex. E at 3.

**77.** Defendant admitted that it was not then furnishing the account to Plaintiff's consumer credit files but expressly reserved the right to report the account as a collection in the future. See Compl. Ex. E at 3.

**78.** Defendant stated that the account had been marked "Cease and Desist" and that Defendant would no longer contact Plaintiff unless required by law. See Compl. Ex. E at 3.

**79.** Defendant apologized for the inconvenience caused to Plaintiff. See Compl. Ex. E at 3. Plaintiff does not treat that apology, standing alone, as an admission of legal liability.

**80.** The June 25 CFPB response was made in response to a regulatory complaint. Plaintiff relies on it as a party statement and admission concerning Defendant's records, positions, knowledge, and remedial actions, not as the post-cease collection communication challenged in Count I.

81. In the June 29 NCDOJ response, Defendant repeated that its validation consisted of account-identifying information and verification supplied by the seller and stated that, in Defendant's view, it needed to provide only documentation establishing the amount it was attempting to collect. The response again did not provide or identify any Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, or chain-of-assignment document. See Compl. Ex. F at 2.

82. Defendant expressly admitted that the extra digit in the balance displayed in the collection email "was a result of a system error" and then affirmed that the balance Defendant intended to state was $3,310.32. See Compl. Ex. F at 2.

83. Plaintiff does not allege that the trailing zero changed the mathematical value of $3,310.32. The allegation is that Defendant admits its automated collection system generated an erroneous balance format in two collection emails and did not correct the format before sending the second email after Plaintiff had complained.

84. Defendant again stated that it was not then furnishing the account to Plaintiff's consumer credit files, reserved the right to report later, and confirmed that the account would remain marked "Cease and Desist." See Compl. Ex. F at 2-3.

85. Defendant again apologized for the inconvenience caused to Plaintiff. See Compl. Ex. F at 3.

86. Defendant's statement that the account was marked "Cease and Desist" confirms that Defendant received and understood Plaintiff's cease request no later than the date of Defendant's first regulatory response. The precise date and time Defendant received, routed, reviewed, and coded the June 11 writings are reflected in Defendant's internal records.

87. Defendant did not state that the June 12 payment-options email fell within any statutory exception to the cease-communication rule.

88. The June 25 and June 29 responses were authored or issued by a Senior Group Manager and Lead Corporate Counsel, respectively, and therefore reflect review at managerial and legal levels of Defendant's organization. See Compl. Exs. E-F.

**F. Unreconciled ownership, amount, and documentation issues**

89. Capital One's transfer notice states that the account was sold and transferred on or about January 21, 2026, while Defendant's collection notice and regulatory response state that Defendant purchased or received the account on January 28, 2026. See Compl. Exs. A, B, E.

90. The difference may be reconcilable only through the operative transfer contract, Bill of Sale, closing records, and account-level schedule showing when and to whom title to this specific account passed. Defendant made unqualified sole-owner and creditor representations without producing those records or explaining the discrepancy.

91. Defendant repeatedly represented that it was the current creditor, sole owner, and current servicer, yet none of the materials supplied to Plaintiff included an account-level sale schedule, assignment, or other record linking the specific account ending in 5222 to Defendant's alleged purchase. See Compl. Exs. B-F.

92. Plaintiff's June 11 validation demand and Notice of Intent to Sue expressly requested the complete Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement or equivalent purchase contract, account-level sale schedule, and every assignment or transfer document necessary to establish a complete and unbroken chain of title. See Compl. Exs. G-H.

93. Despite those formal, account-specific requests, Defendant's June 25 and June 29 responses did not provide, quote, identify, or authenticate any of those title documents. Defendant instead relied on seller-provided account information and repeated its own conclusion that it had purchased the account and possessed the right to collect. See Compl. Exs. E-F.

94. As of the filing of this Complaint, Defendant has failed to provide Plaintiff the Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, or any complete chain of assignments establishing that the account ending in 5222 was included in a conveyance to Defendant.

95. North Carolina prohibits a debt buyer or a collection agency acting for a debt buyer from otherwise attempting to collect without valid documentation that the debt buyer owns the specific account and reasonable verification of the amount allegedly owed. N.C. Gen. Stat. § 58-70-115(5).

96. North Carolina further requires a debt buyer that files an enforcement action to attach the assignment or other writing establishing ownership; if the debt has been assigned more than once, each transfer must be attached to establish an unbroken chain of ownership. N.C. Gen. Stat. § 58-70-150(2).

97. Accordingly, Plaintiff alleges on information and belief that Defendant has not established a verified chain of title and lacks the account-specific ownership interest, legal authority, statutory right to collect, and substantive standing or capacity to judicially enforce the alleged debt unless and until it can prove a valid assignment of this specific account and an unbroken chain of ownership.

98. Plaintiff uses 'standing' here to describe Defendant's asserted status as owner, assignee, or authorized collector of the account—Article III standing in this action, where Defendant is the responding party. Plaintiff does not allege that nonproduction alone conclusively proves nonpossession; rather, the repeated nonproduction, unreconciled transfer dates, absence of an account-level link, admitted system error, and continued unqualified ownership claims plausibly support the inference of deficient authority at the pleading

stage. The operative records are principally within Defendant's possession, custody, or control and may be tested through discovery.

**G. Concrete injuries and causation**

**99.** Plaintiff did not pay Defendant in response to the challenged communications and does not seek recovery of any payment made on the alleged debt.

**100.** Plaintiff incurred out-of-pocket costs to investigate, document, dispute, and attempt to resolve Defendant's conduct, including USPS Priority or Certified-mail charges, postage, printing, copying, paper, ink, envelopes, and related communication and document-preparation expenses. The precise amount will be supported and supplemented through receipts and other evidence.

**101.** Plaintiff lost personal time and use of personal resources reviewing the notices and emails, comparing dates and balances, researching rights, preparing the June 11 writings, submitting regulatory complaints, preserving evidence, and responding to Defendant's positions.

**102.** The communications caused confusion and uncertainty about the alleged debt's ownership, amount, enforceability, verification status, and whether immediate payment was required to preserve Plaintiff's rights.

**103.** Plaintiff experienced anxiety, frustration, emotional distress, aggravation, and loss of peace of mind from repeated collection demands, the post-cease portal solicitation, the use of sensitive personal and financial identifiers, and Defendant's reservation of a right to report the account in the future.

**104.** Plaintiff experienced loss of privacy and interference with personal solitude when Defendant used Plaintiff's private email address and financial-account data to send

automated payment and portal solicitations, including a solicitation after Plaintiff had expressly demanded cessation and limited the permitted purposes of email communication.

**105.** Plaintiff does not allege a present denial of credit, present credit-score loss, or present consumer-report tradeline caused by Defendant. The credit-reporting allegation is limited to Defendant's admitted reservation of a future reporting right and the resulting uncertainty and concern.

**106.** Plaintiff's economic, time, emotional-distress, and privacy injuries are concrete and particularized, were directly and proximately caused by the challenged communications and conduct, and are redressable by damages, civil penalties, costs, and other relief authorized by law.

**107.** The full amount and duration of Plaintiff's actual damages will be established through testimony, records, and discovery.

## COUNT I
## FDCPA VIOLATIONS - OVERSHADOWING, VALIDATION, AND COMMUNICATION AFTER WRITTEN CEASE NOTICE
## (15 U.S.C. §§ 1692c(c), 1692g(b), and 1692k; 12 C.F.R. §§ 1006.6(c) and 1006.38(b))

**108.** Plaintiff repeats and realleges the preceding paragraphs as though fully set forth in this Count.

**109.** Plaintiff is a consumer, the alleged credit-card obligation is a debt, and Defendant is a debt collector within the meaning of the FDCPA.

**110.** The final sentence of 15 U.S.C. § 1692g(b) permits otherwise lawful collection activity during the thirty-day validation period only if the activity does not overshadow or remain inconsistent with the consumer's right to dispute the debt or request original-creditor information. Regulation F contains the same no-overshadowing rule. 12 C.F.R. § 1006.38(b).

**111.** Defendant sent the June 6 email on the exact validation-deadline date printed in its notice and stated that the balance was "now due," promoted immediate payment options, and warned that offers might not be renewed, without explaining that Plaintiff could still exercise validation rights through that date. See Compl. Exs. B-C.

**112.** Viewed from the perspective of the least sophisticated consumer, the timing, demand language, payment emphasis, and offer-expiration warning were capable of overshadowing or creating uncertainty about whether immediate payment was required instead of exercising the statutory rights described in the April 22 notice.

**113.** The overshadowing was material because it concerned the timing and manner in which Plaintiff could preserve and exercise statutory dispute and original-creditor request rights.

114. Section 1692g(b) separately requires a debt collector that receives a qualifying written dispute within the statutory thirty-day period to cease collection until it obtains verification of the debt and mails a copy to the consumer. Under controlling Fourth Circuit law, verification does not require every underlying bill or confidential sale agreement, but it must at least confirm in writing that the amount demanded is the amount claimed by the identified creditor. See Chaudhry, 174 F.3d at 406.

115. Plaintiff's June 11 writings disputed the alleged debt in full, specifically disputed Defendant's status as current creditor and sole owner, and requested the title documents necessary to evaluate the identity of the creditor and Defendant's authority. To the extent that written dispute was timely under § 1692g(b), Defendant was required to cease collection until it obtained and mailed verification responsive to the disputed debt and creditor identity. See Compl. Exs. G-H.

116. Defendant's later responses did not identify any account-level assignment or operative title instrument and did not provide the requested Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, or chain of assignments. Instead, Defendant repeated seller-supplied information and its own ownership conclusion. Plaintiff alleges that, if § 1692g(b) was triggered, Defendant failed to satisfy the federal validation duty before continuing or maintaining collection activity. Plaintiff does not allege that the enumerated instruments are invariably required by § 1692g; their nonproduction is alleged as evidence that Defendant did not verify the specific ownership issue it continued to represent as settled.

117. Separately, 15 U.S.C. § 1692c(c) prohibits further communication concerning a debt after a consumer notifies the debt collector in writing that the consumer refuses to pay or wants further communication to cease, subject only to three narrow exceptions.

118. Plaintiff's June 11 writings unequivocally demanded cessation and specifically prohibited payment-option emails and account-portal solicitations. On information and belief, Defendant received the electronic writings before sending the June 12 email, which promoted portal access and multiple payment methods and did not fall within any exception in § 1692c(c)(1)-(3). The same conduct violated Regulation F, 12 C.F.R. §§ 1006.6(c) and 1006.38(b), as implementing rules informing the FDCPA duties. See Compl. Exs. D, G-H.

**119.** As a direct and proximate result, Plaintiff sustained the actual damages described above and is entitled to recover actual damages, additional statutory damages up to $1,000 in this individual FDCPA action, costs, and reasonable attorney's fees if counsel appears, under 15 U.S.C. § 1692k(a).

## COUNT II
## FDCPA VIOLATIONS - FALSE, DECEPTIVE, OR MISLEADING REPRESENTATIONS
## (15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692k; 12 C.F.R. § 1006.18)

**120.** Plaintiff repeats and realleges the preceding paragraphs as though fully set forth in this Count.

**121.** Section 1692e prohibits any false, deceptive, or misleading representation or means in connection with collection. Section 1692e(2)(A) prohibits false representations concerning the character, amount, or legal status of a debt, and § 1692e(10) prohibits

false representations or deceptive means used to collect a debt or obtain consumer information.

122. Defendant made unqualified representations that it was the current creditor, sole owner, and current servicer; that the claimed balance and legal obligation were due and owing; that it possessed the legal right to collect and enforce the account; and that documents available through its portal verified the accuracy of the debt. See Compl. Exs. B-E.

123. After Plaintiff formally requested the Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, and complete chain of assignments, Defendant failed to provide or identify any of those documents, yet continued to repeat that it had purchased the account and had the right to repayment. See Compl. Exs. E-H.

124. Those unqualified ownership and authority representations were false, deceptive, or misleading, or were made without a reasonable account-level basis, to the extent Defendant lacked a valid assignment or access to the operative records connecting the specific account to the alleged purchase. The repeated nonproduction and conflicting transfer dates plausibly support that inference.

125. Without an account-specific assignment and, if applicable, each intervening transfer, Defendant cannot establish a verified chain of title, the substantive standing or capacity to enforce the account, or the statutory authority to otherwise attempt collection under N.C. Gen. Stat. § 58-70-115(5). North Carolina's requirement that a debt-buyer plaintiff attach each assignment necessary to establish an unbroken chain of ownership further demonstrates the materiality of Defendant's unsupported enforcement claims. N.C. Gen. Stat. § 58-70-150(2).

126. Defendant also represented that Plaintiff could review 'documents verifying the accuracy of your debt' through the portal, while its later responses characterized its verification as seller-provided account information, asserted that only the amount needed to be established, and failed to identify or produce any operative title or account-level assignment document. The portal solicitation used the promise of verified accuracy to induce Plaintiff to provide an account reference and the last four digits of a Social Security number and then consider payment options. See Compl. Exs. D-F.

**127.** Defendant twice displayed the balance as "3310.320" and later admitted that the additional digit resulted from a system error. See Compl. Exs. C-D, F. Plaintiff relies on that admission as evidence of inaccurate automated account output, not on a claim that a trailing zero changes the mathematical value of the intended balance.

128. The alleged misrepresentations and omissions were material because they concerned who owned the account, whether Defendant had standing and legal authority to collect or enforce it, whether validation was complete, the accuracy of the amount displayed, and whether Plaintiff should provide personal information or make payment.

**129.** The Fourth Circuit evaluates § 1692e communications from the perspective of the least sophisticated consumer and requires materiality. See Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394-95 (4th Cir. 2014); Lembach v. Bierman, 528 F. App'x 297, 303 (4th Cir. 2013). The pleaded representations would affect a consumer's ability to make an intelligent decision about disputing, verifying, or paying the alleged debt.

**130.** Defendant's conduct also violated Regulation F, 12 C.F.R. § 1006.18. Plaintiff cites the regulation as an implementing rule and seeks relief through the FDCPA's private remedy, 15 U.S.C. § 1692k.

131. Plaintiff responded to and acted upon the challenged representations by investigating the account, preparing written disputes and cease notices, submitting regulatory complaints, and incurring the concrete injuries and expenses described above.

132. As a direct and proximate result, Plaintiff is entitled to actual damages, additional statutory damages up to $1,000 in the aggregate for this individual FDCPA action, costs, and reasonable attorney's fees if counsel appears, under 15 U.S.C. § 1692k(a).

## COUNT III
## NORTH CAROLINA COLLECTION AGENCY ACT / NORTH CAROLINA DEBT COLLECTION ACT
**(N.C. Gen. Stat. §§ 58-70-90 through 58-70-130; alternatively, §§ 75-50 through 75-56)**

133. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth in this Count.

134. Defendant is a collection agency and debt buyer under N.C. Gen. Stat. §§ 58-70-15(b)(4) and 58-70-90 because it admits purchasing a charged-off consumer credit account for collection and then attempted to collect that account from Plaintiff.

135. Part 3 of Article 70 prohibits a collection agency from collecting or attempting to collect by fraudulent, deceptive, misleading, or unfair practices. N.C. Gen. Stat. §§ 58-70-110 and 58-70-115.

136. Section 58-70-110(3) prohibits falsely representing that the collection agency possesses information or something of value for the consumer. Section 58-70-110(4) prohibits falsely representing the character, extent, or amount of a debt, its legal status, or the creditor's rights or intentions.

137. Section 58-70-115(5) prohibits a debt buyer, or a collection agency acting for a debt buyer, from otherwise attempting to collect without valid documentation that the debt

buyer owns the specific account and reasonable verification of the amount allegedly owed.

**138.** For purposes of § 58-70-115(5), reasonable verification includes documentation of the original creditor; the debtor's name and address as reflected in the original creditor's records; the original consumer account number; a copy of the contract or other document evidencing the debt; and an itemized accounting.

**139.** For a charged-off debt, the required itemized accounting includes the charge-off balance, post-charge-off interest and fees, post-charge-off payments or credits, and the most recent twelve account statements sent before charge-off. N.C. Gen. Stat. § 58-70-90(4).

**140.** Defendant violated §§ 58-70-110(3), 58-70-110(4), and 58-70-115(5) by engaging in one or more of the following acts, as proven through discovery and trial:

a. Attempting to collect without valid account-level ownership documentation, including the operative Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement or equivalent purchase contract, account-level sale schedule, and assignments needed to connect the specific account ending in 5222 to Defendant's alleged purchase;

**b.** Attempting to collect while lacking one or more components of reasonable verification, including a contract or other debt-evidencing document and the state-law itemized accounting;

c. Representing that Defendant was the sole owner, current creditor, and entity with standing to enforce the debt without reconciling the different transfer dates or producing an account-level assignment and unbroken chain of title;

d. Failing, after repeated formal requests, to provide or identify any Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, or chain-of-assignment document, while continuing to represent that its ownership and authority were established;

e. Representing that portal documents verified the accuracy of the debt while later identifying only seller-provided information, disclaiming the need for core account records under its federal-law position, and admitting that its collection system had produced an erroneous balance format; and

f. Continuing a payment and portal solicitation after Plaintiff expressly demanded cessation and prohibited that form of communication.

141. Plaintiff does not base this Count solely on Defendant's refusal to send every requested document. Rather, Defendant's complete failure to produce or identify any operative title instrument or account-level assignment after repeated, specific requests is circumstantial evidence that Defendant attempted collection without the valid ownership documentation and reasonable verification that § 58-70-115(5) requires.

142. Absent proof of a valid account-specific assignment and complete chain of ownership, Defendant has not established its substantive standing or capacity to enforce the alleged debt and lacks the statutory right to otherwise attempt collection. The precise records Defendant possessed or could access when it sent each communication, and the identity of the entity that owned the account, are facts principally within Defendant's control and properly alleged on information and belief.

**143.** Defendant's violations proximately caused Plaintiff's economic loss, diverted time, confusion, emotional distress, anxiety, frustration, loss of privacy and peace of mind, and other actual damages described above.

**144.** N.C. Gen. Stat. § 58-70-130 creates a private right of action for actual damages and a civil penalty of not less than $500 and not more than $4,000 for each violation. The debtor need not prove actual damages to recover the civil penalty.

**145.** Section 58-70-130(c) further provides that violations of Part 3 constitute unfair or deceptive acts or practices, while specifying that the civil penalties under § 58-70-130 are not trebled. Plaintiff seeks trebling only of compensatory damages recoverable under N.C. Gen. Stat. § 75-16, not trebling of Article 70 civil penalties.

**146.** In the alternative, if Defendant contends and proves that it is not a person subject to Chapter 58, Article 70, Plaintiff alleges that Defendant is a debt collector under N.C. Gen. Stat. § 75-50 and that the same acts violated N.C. Gen. Stat. § 75-54(3) and (4), which prohibit false possession-of-information representations and false representations of the character, extent, amount, legal status, or creditor rights concerning a debt.

**147.** Under that alternative statutory classification, N.C. Gen. Stat. § 75-56 provides a private action for actual damages and civil penalties of not less than $500 and not more than $4,000 for each violation.

**148.** The primary Article 70 theory and alternative Chapter 75, Article 2 theory are pleaded in the alternative under Federal Rule of Civil Procedure 8(d) because N.C. Gen. Stat. § 75-50(3) excludes persons subject to Chapter 58, Article 70 from the NCDCA definition of "debt collector." Plaintiff seeks the remedies authorized by the classification established by the evidence, not duplicative penalties for the same statutory status.

**COUNT IV**
**NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**(N.C. Gen. Stat. §§ 75-1.1, 75-16, and 75-16.1)**

**149.** Plaintiff repeats and realleges the preceding paragraphs as though fully set forth in this Count.

**150.** Defendant's purchasing, servicing, and collecting of consumer debts are business activities in or affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

**151.** Defendant's violations of Chapter 58, Article 70 alleged in Count III constitute unfair or deceptive acts or practices under N.C. Gen. Stat. § 58-70-130(c) and independently satisfy the unlawful-act element of § 75-1.1.

152. Defendant also engaged in independently unfair or deceptive conduct by combining unqualified sole-owner, standing, and legal-authority claims with its repeated failure to provide any Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, or complete chain of assignments; an unreconciled transfer-date discrepancy; an admitted system error in account output; a representation that portal documents verified the debt; and a post-cease payment and portal solicitation requiring sensitive identifying information.

**153.** The conduct was unfair because it was oppressive, unscrupulous, and substantially injurious to a consumer attempting to determine whether an alleged charged-off debt was valid, accurately stated, and lawfully owned before surrendering personal information or money.

154. The conduct was deceptive because it had the capacity or tendency to mislead a reasonable consumer about ownership, chain of title, substantive standing, verification,

legal authority, the accuracy of the balance, the need for immediate payment, and the effect of Plaintiff's cease notice. Proof of a specific intent to deceive is not required.

**155.** To the extent actual reliance is required for the misrepresentation-based aspects of this claim, Plaintiff actually and reasonably relied on Defendant's statements as requiring action by spending time and money to investigate the alleged account, prepare and transmit disputes and notices, preserve evidence, and seek regulatory review rather than disregard the communications.

**156.** Defendant's unfair or deceptive acts were a direct and proximate cause of Plaintiff's out-of-pocket expenses, diverted time, confusion, emotional distress, privacy harm, and loss of peace of mind.

**157.** Under N.C. Gen. Stat. § 75-16, Plaintiff is entitled to recover three times the amount of compensatory damages assessed for injuries caused by Defendant's violations, subject to the prohibition against duplicative recovery and the statutory rule that Article 70 civil penalties are not trebled.

**158.** If counsel appears and the Court makes the findings required by N.C. Gen. Stat. § 75-16.1, Plaintiff also seeks reasonable attorney's fees. Plaintiff further seeks taxable costs and all other relief authorized by Chapter 75.

## COUNT V
## INVASION OF PRIVACY - INTRUSION UPON SECLUSION
## (North Carolina Common Law)

**159.** Plaintiff repeats and realleges the preceding paragraphs as though fully set forth in this Count.

**160.** North Carolina recognizes invasion of privacy by intrusion upon seclusion, defined as an intentional physical or other intrusion upon another's solitude, seclusion, or private affairs

or concerns that would be highly offensive to a reasonable person. See Miller v. Brooks, 123 N.C. App. 20, 26-27, 472 S.E.2d 350, 354 (1996).

**161.** Plaintiff's private email account, personal financial affairs, consumer-account information, and Social Security number information are private affairs and concerns in which Plaintiff maintained a reasonable expectation of privacy and freedom from unwanted collection intrusion after an express cease notice.

**162.** Defendant intentionally used Plaintiff's private email address, alleged account data, and sensitive identifying information to send automated collection solicitations on June 6 and June 12, 2026.

**163.** The June 12 solicitation was sent after Plaintiff had expressly demanded that Defendant cease collection communications and had specifically prohibited automated payment solicitations and account-portal links. It directed Plaintiff into Defendant's portal, required entry of an account reference and the last four digits of a Social Security number, and then presented payment options. See Compl. Exs. D, G-H.

**164.** The intrusion was not merely an accidental misdelivery. The communication was generated through Defendant's collection systems, identified Plaintiff by name and account, and was sent for the express purpose of collecting the alleged debt.

**165.** In the context of a disputed charged-off debt, an express cease notice, a specific prohibition on portal and payment solicitations, and the use of sensitive financial identifiers, Defendant's continued electronic intrusion into Plaintiff's private affairs was highly offensive to a reasonable person.

**166.** Defendant later defended the electronic communication through a Senior Group Manager, acknowledged the account-system error through Lead Corporate Counsel, and

confirmed that the account had been coded "Cease and Desist." These managerial-level acts support an inference of review, ratification, or condonation to be tested in discovery. See Compl. Exs. E-F.

**167.** This Count is based solely on intrusion upon seclusion. Plaintiff does not assert a North Carolina claim for public disclosure of private facts, false light, or a claim under the federal Privacy Act, and does not presently allege that Defendant publicly disclosed the debt to a third party.

**168.** As a direct and proximate result of the intrusion, Plaintiff suffered anxiety, frustration, emotional distress, aggravation, loss of privacy and peace of mind, interference with personal solitude, diverted time, and out-of-pocket expenses.

**169.** Plaintiff seeks compensatory and, where necessary to vindicate the right in the absence of measurable economic loss, nominal damages. Plaintiff also seeks punitive damages under N.C. Gen. Stat. §§ 1D-15 and 1D-25 upon proof by clear and convincing evidence that Defendant's officers, directors, or managers participated in or condoned willful or wanton conduct related to the privacy injury.

**170.** This common-law claim is pleaded in the alternative and cumulative to the extent permitted by law, without duplicative recovery for the same injury.

## V. ITEMIZED INJURIES AND STATUTORY REMEDIES

**171.** Plaintiff's injuries, subject to proof and supplementation, include the following distinct categories:

  **a.** Out-of-pocket expenses for certified mail, postage, envelopes, printing, copying, paper, ink, and other reasonable costs incurred to investigate, document, dispute, and respond to Defendant's conduct;

**b.** Loss of personal time and use of personal resources spent reviewing communications, comparing account information, researching rights, preparing notices, submitting regulatory complaints, preserving records, and addressing Defendant's responses;

c. Confusion and informational harm concerning the identity of the owner, the existence of a verified chain of title, Defendant's standing and legal authority to collect or enforce, the amount and legal status of the alleged debt, the adequacy of verification, the effect of the validation deadline, and the action Plaintiff was required to take;

**d.** Anxiety, frustration, aggravation, emotional distress, and loss of peace of mind caused by the challenged collection demands and unresolved account assertions;

**e.** Loss of privacy and interference with solitude arising from unwanted electronic collection communications, use of private financial information, and the post-cease portal solicitation requiring sensitive identifying information;

**f.** Reasonable apprehension and uncertainty resulting from Defendant's express reservation of a future right to report the alleged account, while acknowledging that it was not then furnishing the account; and

**g.** Any additional economic, emotional-distress, privacy, or consequential loss established through discovery and competent evidence.

**172.** The corresponding remedies sought are:

**a.** FDCPA actual damages under 15 U.S.C. § 1692k(a)(1); additional statutory damages not exceeding $1,000 in the aggregate for this individual action under § 1692k(a)(2)(A); and costs and reasonable attorney's fees under § 1692k(a)(3);

**b.** Actual damages and a civil penalty of $500 to $4,000 for each proven violation of Chapter 58, Article 70 under N.C. Gen. Stat. § 58-70-130, without trebling of the civil penalty;

**c.** Alternatively, actual damages and a civil penalty of $500 to $4,000 for each proven NCDCA violation under N.C. Gen. Stat. § 75-56 if Defendant is found not to be subject to Chapter 58, Article 70;

**d.** Treble compensatory damages under N.C. Gen. Stat. § 75-16 for injuries caused by unfair or deceptive acts, excluding trebling of Article 70 civil penalties and subject to no duplicative recovery;

**e.** Reasonable attorney's fees under N.C. Gen. Stat. § 75-16.1 only if a duly licensed attorney appears and the Court makes the statutory findings;

**f.** Compensatory, nominal, and punitive damages on the intrusion-upon-seclusion claim to the extent proven and authorized by North Carolina law;

**g.** Taxable costs, pre-judgment interest where authorized, post-judgment interest under 28 U.S.C. § 1961, and all other legal or equitable relief the Court deems just and available; and

**h.** An election or allocation of overlapping remedies that provides the maximum lawful recovery without duplicate compensation for the same injury.

## VI. DEMAND FOR JURY TRIAL

**173.** Plaintiff demands a trial by jury under Federal Rule of Civil Procedure 38 and the Seventh Amendment on all claims and issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant and award the following relief:

A. A declaration, to the extent declaratory relief is legally available and not duplicative, that Defendant violated the provisions of federal and North Carolina law identified in the Counts above and failed to establish an account-specific ownership interest or present authority to collect or enforce the alleged debt;

**B.** Actual damages in an amount to be determined by the trier of fact for Plaintiff's economic loss, diverted time and resources, emotional distress, confusion, privacy harm, and other proven injuries;

**C.** Additional FDCPA statutory damages up to $1,000 in the aggregate under 15 U.S.C. § 1692k(a)(2)(A);

**D.** North Carolina civil penalties of $500 to $4,000 for each proven violation under N.C. Gen. Stat. § 58-70-130 or, in the alternative, § 75-56, according to the statutory classification established by the evidence;

**E.** Treble compensatory damages under N.C. Gen. Stat. § 75-16, while excluding the trebling of Article 70 civil penalties and avoiding duplicative recovery;

**F.** Compensatory, nominal, and punitive damages on Count V to the extent proven and permitted by N.C. Gen. Stat. §§ 1D-15 and 1D-25 and other applicable North Carolina law;

**G.** Taxable costs and reasonable attorney's fees if counsel appears and fees are authorized under 15 U.S.C. § 1692k(a)(3), N.C. Gen. Stat. § 75-16.1, or another applicable provision;

**H.** Pre-judgment interest where authorized and post-judgment interest under 28 U.S.C. § 1961;

**I.** An election or allocation of remedies that affords the maximum lawful relief without double recovery; and

**J.** Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Na'eem Omar Betz*
NA'EEM OMAR BETZ
1905 Taylor Avenue
Charlotte, North Carolina 28216-4547
Telephone: (202) 706-8063
Email: nobetzo@gmail.com
Plaintiff, *Pro Se*

Dated: July 18th, 2026

## EXHIBIT INDEX

The following exhibits are referenced in the Complaint.

| Exhibit | Description |
|---|---|
| **A** | Capital One notice dated February 26, 2026 stating that Defendant now owns the Savor account ending in 5222 and that the account was sold and transferred on or about January 21, 2026. |
| **B** | Defendant's collection and validation notice dated April 22, 2026, including the response coupon and privacy notice. |
| **C** | Defendant's June 6, 2026 email titled "NAEEM, View Your New Payment Options." |
| **D** | Defendant's June 12, 2026 email titled "NAEEM, Finish Reviewing Your MCM Account!" |
| **E** | Defendant's June 25, 2026 response submitted through the CFPB portal. |
| **F** | Defendant's June 29, 2026 response to the North Carolina Department of Justice. |
| **G** | Plaintiff's June 11, 2026 Formal Debt Validation, Verification, Direct Dispute, and Demand for Proof of Authority, including demands for the Bill of Sale, Master Bill of Sale, Purchase and Sale Agreement, Forward Flow Agreement, account-level sale schedule, and complete chain of title. |
| **H** | Plaintiff's June 11, 2026 Notice of Intent to Sue, Demand for Immediate Cessation of Collection Activity, Litigation Hold, and Final Opportunity to Cure, reiterating the chain-of-title and authority-document demands. |

**CERTIFICATE OF SERVICE**

I certify that, after filing, I will serve a copy of this Complaint and Demand for Jury Trial with its Exhibits A,B,C,D,E,F,G,H and Summons on Defendant Midland Credit Management, Inc., by an authorized nonparty process server, or service was waived, as reflected in the separately filed affidavit of service or executed waiver, using the following method permitted by Federal Rule of Civil Procedure 4(h): This certificate should be updated after service is completed.

Midland Credit Management, Inc.
350 Camino De La Reina, Suite # 100
San Diego, CA 92108
877-452-7959
midlandcreditonline.com

Midland Credit Management, Inc.
320 E Big Beaver Rd., Suite # 300
Troy, MI 48083
800-265-8825

*Defendants*

Registered Agent: Corporation Service Company
Registered Office Address: 2626 Glenwood Avenue, Suite # 550
Raleigh, NC, 27608 Wake County

*Counsel for Defendant Midland Credit Management, Inc.*

*/s/ Na'eem Omar Betz*
NA'EEM OMAR BETZ

Date: July 18th, 2026